UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT FAY,<br><br>             Plaintiff,<br><br>    v.<br><br>VOLT INFORMATION SCIENCES, INC., WILLIAM J. GRUBBS, NICK S. CYPRUS, BRUCE G. GOODMAN, LINDA PERNEAU, ARNOLD URSANER, AND CELIA R. BROWN,<br><br>             Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Fay ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Volt Information Sciences, Inc. ("Volt" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Volt's website concerning the Company's public statements; and (d) review of other publicly available information concerning Volt and the Defendants.

**NATURE OF THE ACTION**

1. Plaintiff brings this action on behalf of himself against the Company and members of the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by Vega Consulting, Inc. ("Parent") and Vega MergerCo, Inc. ("Purchaser"), a wholly-owned subsidiary of Parent (the "Proposed Transaction").

2. On March 12, 2022, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Parent and Purchaser. Pursuant to the terms of the Merger Agreement, each Volt common share issued and outstanding will be converted into the right to receive $6.00 per share in cash (the "Merger Consideration"). In connection with the Proposed Transaction, Purchaser commenced a tender offer to acquire all of Volt's outstanding common stock and will expire on April 22, 2022.

3. On March 25, 2022, the Company filed an incomplete and materially misleading Recommendation Statement with the SEC (the "Recommendation Statement") in connection with the Proposed Transaction. The Recommendation Statement omits material information concerning the Proposed Transaction.

4. Accordingly, the failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Volt's stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

5. As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9. Plaintiff has been the owner of the common stock of Volt since prior to the transaction herein complained of and continuously to date.

10. Defendant Volt is a New York corporation with its principal executive offices located at 2401 N. Glassell Street, Orange, California 92865. The Company's stock trades on the New York Stock Exchange under the ticker "VOLT."

11. Defendant William J. Grubbs ("Grubbs") is and has been the Chairman of the Board of Volt at all times during the relevant period.

12. Defendant Nick S. Cyprus ("Cyprus") is and has been a Volt director at all times the relevant time period.

13. Defendant Bruce G. Goodman ("Goodman") is and has been a Volt director at all times the relevant time period.

14. Defendant Linda Perneau ("Perneau") is and has been the Chief Executive Officer ("CEO"), President, and a director of Volt at all times the relevant time period.

15. Defendant Arnold Ursaner ("Ursaner") is and has been a Volt director at all times the relevant time period.

16. Defendant Celia R. Brown ("Brown") is and has been a Volt director at all times the relevant time period.

17. Defendants Grubbs, Cyprus, Goodman, Perneau, Ursaner, and Brown, are collectively referred to herein as the "Individual Defendants."

18. Defendant Volt, along with the Individual Defendants, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. Volt provides traditional time, materials-based, and project-based staffing services in the United States, Europe, Canada, and the Asia Pacific. The Company operates through North American Staffing, International Staffing, and North American MSP segments. It provides contingent staffing, direct placement, personnel recruitment, staffing management, and other employment services; and managed service programs consisting of managing the procurement, on-boarding of contingent workers, and specialized solutions, such as managing suppliers, sourcing and recruiting support, statement of work management, supplier performance measurement, optimization and analysis, benchmarking of spend demographics and market rate

4

analysis, consolidated customer billing, and supplier payment management solutions. The Company also offers call center and payroll services; recruitment process outsourcing; and customized talent and supplier management solutions, as well as act as a subcontractor or associate vendor to other national providers in their MSPs. It serves multinational, national, and local customers in various industries, including aerospace, automotive, banking and finance, consumer electronics, information technology, insurance, life science, manufacturing, media and entertainment, pharmaceutical, software, telecommunication, transportation, and utilities.

### **The Company Announces the Proposed Transaction**

20. On March 14, 2022, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated, in pertinent part:

> ORANGE, Calif. & ATLANTA--(BUSINESS WIRE)--Volt Information Sciences, Inc. ("Volt" or the "Company") (NYSE-AMERICAN: VOLT), a global provider of staffing services, and Vega Consulting, Inc. ("Vega"), an affiliate of ACS Solutions ("ACS Solutions"), a global provider of information technology solutions and services (www.acsicorp.com), announced today that Volt and Vega have entered into a definitive merger agreement under which Volt will be acquired for $6.00 per share in cash. This per share purchase price represents a premium of 99% to the Company's closing stock price on March 11, 2022.
>
> Vega will commence a tender offer no later than March 25, 2022 to acquire all outstanding shares of Volt for $6.00 per share in cash. The merger agreement was approved by Volt's board of directors, which recommends that Volt stockholders tender their shares in the offer.
>
> Raj Sardana, Chief Executive Officer of ACS Solutions, commented, "We're pleased to announce the plan to acquire Volt, and look forward to welcoming their talented teams to our family of companies. This transaction will diversify our business mix by adding a sizable commercial staffing and MSP business to our staffing services portfolio, further expanding our suite of services and offerings."
>
> Volt's President and Chief Executive Officer, Linda Perneau, added, "This acquisition offers Volt a compelling opportunity for continued growth. With ACS Solutions as our sister company, we will be in a position to accelerate investments in technology, enhance our capabilities, expand our operations, and ultimately deliver better value to our clients -- all complementing the superior client service that has come to be synonymous with the Volt brand."

In connection with the execution of the merger agreement, certain of Volt's stockholders, directors and executive officers holding approximately 26% in the aggregate of the Company's outstanding shares entered into agreements in which they agreed to tender all of their shares in the tender offer.

The closing of the transaction is subject to customary closing conditions, including the expiration or termination of certain regulatory periods and the tender of shares representing at least two-thirds of the Company's outstanding common stock in the tender offer. Following the successful completion of the tender offer, Vega will acquire any remaining shares not tendered in the tender offer through a second-step merger at the same price.

The merger agreement provides for a "go-shop" period during which Volt – with the assistance of Foros, its exclusive financial advisor – will actively solicit, evaluate and potentially enter into negotiations with, and provide due diligence access to, parties that submit alternative proposals. The go-shop period will extend for 30 calendar days until April 11, 2022. Volt will have the right to terminate the merger agreement to enter into a superior proposal, subject to the conditions and procedures specified in the merger agreement. There can be no assurance that this process will result in a superior proposal. Volt does not intend to disclose developments during this process unless its Board of Directors makes a decision with respect to any potential superior proposal.

The transaction is expected to close in the second calendar quarter of 2022. After closing, Volt will become a privately-held company and shares of Volt common stock will no longer be listed on any public market. For further information regarding the terms and conditions contained in the merger agreement, please see Volt's Current Report on Form 8-K, which will be filed with the U.S. Securities and Exchange Commission (the "SEC") in connection with this transaction.

Foros is acting as financial advisor to Volt and Milbank LLP is acting as legal counsel to Volt. Kilpatrick Townsend and Stockton LLP is acting as legal counsel to Vega.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE RECOMMENDATION STATEMENT**

21. On March 25, 2022, the Company authorized the filing of the Recommendation Statement with the SEC. The Recommendation Statement recommends that the Company's stockholders tender their shares in favor of the Proposed Transaction.

22. Defendants were obligated to carefully review the Recommendation Statement prior to its filing with the SEC and dissemination to the Company's unitholders to ensure that it

6

did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresent and/or omit material information that is necessary for the Company's shareholders to make informed decisions concerning whether to tender their shares in favor of the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Management's Projections**

23. The Recommendation Statement contains financial projections prepared by senior members of Volt's management in connection with the Proposed Transaction, but fails to provide material information concerning such.

24. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

25. In order to make management's projections included in the Recommendation Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26. Specifically, with respect to each set of financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to, all line items used to calculate: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

27. Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when deciding whether to tender their shares in connection with the Proposed Transaction.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

28. The Recommendation Statement contains information concerning the background of the Proposed Transaction, but fails to disclose material information concerning such.

29. First, the Recommendation Statement fails to disclose sufficient information concerning the number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, as well as whether any agreement contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

30. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Foros's Opinion**

31. The Recommendation Statement contains the financial analyses and opinion of Foros Securities LLC ("Foros") concerning the Proposed Transaction but fails to provide material information concerning such.

32. With respect to Foros's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) The Company's terminal values; (ii) the inputs and assumptions underlying Foros's use of perpetual growth rates of 0.0%, 1.0% and 2.0% (iii) the inputs and assumptions underlying Foros's use of a discount rate of 13.5%; and (iv) the Company's weighted average cost of capital.

33. With respect to Foros's *Precedent Transaction Analysis*, the Recommendation Statement fails the basis underlying Foros's decision to review only one precedent transaction for its analysis.

34. With respect to Foros's *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose the individual multiples and metrics for each of the companies observed by Foros's in its analysis.

35. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

36. Without the above described information, the Company's shareholders are not fully informed with respect to the Proposed Transaction. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### COUNT I

### (Against All Defendants for Violations of Section 14(d) of the Exchange Act and Rule 14d-9 Promulgated Thereunder)

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder makes it a requirement to make full and complete disclosure in connection with tender offers.

39. As discussed herein, the Recommendation Statement, while soliciting shareholder support for the Proposed Transaction, misrepresent and/or omit material facts concerning the Proposed Transaction.

40. Defendants prepared, reviewed, filed and disseminated the false and misleading Recommendation Statement to Volt's shareholders. In doing so, Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in favor of the Proposed Transaction. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

42. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Proposed Transaction negotiation and sales process and reviewing Volt's financial advisor's complete financial analyses purportedly summarized in the Recommendation Statement.

43. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

44. Volt is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Recommendation Statement.

45. Defendants knew that Plaintiff and other shareholders would rely upon the Recommendation Statement in determining whether to tender their shares in favor of the Proposed Transaction.

46. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder, absent injunctive relief from the Court, Plaintiff and other shareholders will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

47. Plaintiff has no adequate remedy at law.

### COUNT II

**(Against All Defendants for Violation
Of Section 14(e) of the Exchange Act)**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made false statements of material fact or failed to state all material facts that would be necessary to make the statements made, in light of the circumstances, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction.

50. Defendants knew that Plaintiff and the Company's shareholders would rely upon their statements made in the Recommendation Statement in determining whether to tender shares in favor of the Proposed Transaction.

51. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff and other shareholders will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

## COUNT III

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Volt within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Volt, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement contain the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Recommendation Statement.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

57. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for their damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: April 8, 2022

Respectfully submitted,

By: /s/ Joshua M. Lifshitz
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW PLLC**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*